IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) Criminal No. 7:17-cr-00026 |
| v. | ) |
| | ) By: Elizabeth K. Dillon |
| ALEXANDER CLARANCE STEELE | ) United States District Judge |

**MEMORANDUM OPINION AND ORDER**

On July 10, 2020, defendant Alexander Clarance Steele, proceeding *pro se*, filed a letter with the court seeking appointment of counsel to seek compassionate release related to COVID-19. (Dkt. No. 96.) In accordance with local Standing Order 2019-1, the court appointed the Federal Public Defender (FPD) and ordered the FPD to file a supplement to Steele's motion. (Dkt. Nos. 97, 98.) The FPD filed a supplement to Steele's motion on July 24, 2020, (Dkt. No. 103), which the government has opposed (Dkt. No. 107). Steele, by counsel, filed a reply to the government's opposition. (Dkt. No. 108.) The court finds that no hearing on the motion is necessary and, for the reasons stated below, will deny Steele's motion.

I.  BACKGROUND

Steele was charged by superseding indictment on May 4, 2017, with conspiracy to possess with intent to distribute and to distribute fifty grams or more of methamphetamine, possession with intent to distribute methamphetamine, possession of a firearm in furtherance of a drug trafficking crime, and unlawful possession of a firearm by a felon. (Dkt. No. 31.) On December 18, 2017, Steele pled guilty to count one of the superseding indictment. (Dkt. Nos. 66, 67.) The agreed statement of facts indicates that Steele would obtain methamphetamine from a co-conspirator supplier and then redistribute to others. It was agreed that the drug weight reasonably foreseeable to Steele was between 350 and 500 grams of methamphetamine. (Dkt.

No. 68.) The court sentenced Steele to 120 months in custody of the Federal Bureau of Prisons (BOP) with credit for time served on a related state charge, followed by four years of supervised release. (Dkt. No. 94.)

Steele is currently housed at the Robert A. Deyton detention facility operated by Immigrations and Customs Enforcement (ICE) in Lovejoy, Georgia. Steele alleges that he has "been informed by a officer who works here that officers have caught the Covid-19 virus as well as inmates. The officer told me . . . there are inmates here currently that have the virus." (Dkt. No. 96, at 1.) However, the government provides a link to a website concerning ICE guidance on COVID-19, where ICE does not report any known cases of employee or inmate infection at the Robert A. Deyton facility.[1] The government also notes that ICE has implemented procedures to minimize the spread of COVID-19 in its facilities, including isolated housing, sanitizing, social distancing, reduced intake of new detainees, identification of high-risk detainees, and the use of personal protective equipment and health screening.

Steele is in his thirties and reports that he has a body mass index (BMI) of 43.5 and a long history of smoking, which he states put him at higher risk of complications from COVID-19. (Dkt. No. 103, at 1, 5; Dkt. No. 96, at 1; Dkt. No. 106.) He also states that as a minority he is at greater risk. With regard to his BMI, Steele notes that individuals with BMIs of 30 or greater are generally considered obese, and his BMI of more than 40 makes him severely obese. Because the CDC considers individuals with a BMI of 30 or higher to be at a higher risk of severe cases of COVID-19, Steele argues that his underlying medical conditions present an extraordinary and compelling reason warranting compassionate release.

---

[1] The link provided in the government's brief appears to be incorrect. However, the court reviewed the "Employee Confirmed Cases" and "ICE Detainee Statistics" on the ICE website and did not see any reported cases of COVID-19 at Steele's facility. *See ICE Guidance on COVID-19*, U.S. Immigration and Customs Enforcement, http://www.ice.gov/coronavirus (last visited Aug. 10, 2020).

2

## II. ANALYSIS

### A. Compassionate Release

United States Code Title 18, Section 3582(c)(1)(A), as amended by the First Step Act and in pertinent part, provides that the court may not modify a term of imprisonment once it has been imposed except that:

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent they are applicable, if it finds that –
>
> (i) extraordinary and compelling reasons warrant such a reduction . . . .

In addition to satisfying the above, the reduction must be "consistent with applicable policy statement issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1). The Sentencing Commission's policy statement on compassionate release is set forth in U.S. Sentencing Guidelines § 1B1.13. The Policy provides, in pertinent part, that under § 3582(c)(1)(A), the court may reduce a term of imprisonment "if, after considering the factors set forth in 18 U.S.C. § 3553(a)," the court determines that:

> (1)(A) Extraordinary and compelling reasons warrant the reduction;
> . . .
>
> (2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
> (3) The reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13. In the application notes, the Policy recognizes extraordinary and compelling reasons with regard to medical conditions (terminal illnesses or serious conditions that diminish self-care abilities), age with deterioration and significant time served, family circumstances, and other extraordinary and compelling reasons other than, or in combination with, the above reasons. U.S.S.G. § 1B1.13 n.1.

A defendant seeking relief under § 3582(c)(1)(A) has "the burden of establishing that compassionate release is warranted." *United States v. Heromin*, No. 8:11-CR-550-T-33SPF, 2019 WL 2411311, at *2 (M.D. Fla. June 7, 2019). Compassionate release is "an extraordinary and rare event." *White v. United States*, 378 F. Supp. 3d 784, 787 (W.D. Mo. 2019). Rehabilitation, standing alone, "shall not be considered an extraordinary and compelling reason" for a sentence modification. 28 U.S.C. § 994(t); U.S.S.G. § 1B1.13 n.3.

**B. Exhaustion**

Steele points out that he is detained at a non-BOP facility and therefore cannot petition his warden or the BOP for his release. The government agrees that because Steele "is not in BOP custody, the exhaustion requirement should not apply to him." (Dkt. No. 107, at 5.) Accordingly, the court finds that Steele has exhausted his administrative remedies. *See United States v. Norris*, No. 7:19-cr-36-BO-2, 2020 WL 2110640, at *2 (E.D.N.C. Apr. 30, 2020) ("The BOP has not moved for compassionate release on Norris's behalf and, because he is not at a BOP facility, there is no BOP warden to whom Norris can direct a compassionate relief request. The government has not attempted to identify any additional administrative procedures available to Norris. Consequently, the Court finds that he has exhausted his administrative remedies.").

**C. Extraordinary and Compelling Reasons**

Steele bases his motion for release on his risk of contracting COVID-19 while in custody. "In the context of the COVID-19 outbreak, courts have found extraordinary and compelling reasons for compassionate release when an inmate shows both a particularized susceptibility to the disease and a particularized risk of contracting the disease at his prison facility." *United States v. Harper*, No. 7:18-cr-00025, 2020 WL 2046381, at *3 (W.D. Va. Apr. 28, 2020).

Steele primarily focuses on his obesity as a risk factor that could cause him to suffer a more severe case of COVID-19 were he to contract the virus. The government contests whether Steele has a sufficiently diminished ability to provide self-care, citing to U.S.S.G. § 1B1.13 cmt. n. 1(a)(i) and (ii). It notes that Steele's obesity does not appear to have affected his breathing, blood pressure, or other systems.

But even assuming Steele has established a particularized susceptibility to COVID-19, he has failed to show a particularized risk of contracting the disease at his facility. Steele alleges that an officer at Deyton told him there were active cases of COVID-19 within the facility, but he has provided no record of any active cases of either inmates or staff or of any inmates or staff who have recovered from the virus. To the contrary, the ICE website does not report any active cases of COVID-19 in the Robert A. Deyton facility. Additionally, the court notes the steps ICE has taken to reduce the number of active cases.[2] Accordingly, the court finds that Steele has failed to meet his burden to show that extraordinary and compelling reasons justify his release.

---

[2] *See COVID-19 Pandemic Response Requirements*, U.S. Immigration and Customs Enforcement, Enforcement and Removal Operations (July 28, 2020), https://www.ice.gov/doclib/coronavirus/eroCOVID19responseReqsCleanFacilities.pdf

**D. Section 3553(a) Factors**

Even if Steele established extraordinary and compelling reasons, the court would nonetheless exercise its discretion to deny his motion. The parties disagree about what percentage of his sentence Steele has already served, but the court acknowledges that the BOP sentence calculation Steele provided projects a June 18, 2024 release date. (Dkt. No. 103-3.) The court further acknowledges that Steele engaged in programming while in BOP custody and has offered to assist the government since his sentencing.

However, the court must also consider the nature and circumstances of the offense, the history and characteristics of the defendant, the need for the sentence imposed, and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. *See* 18 U.S.C. § 3553(a). Although Steele pled guilty to one count of conspiracy involving 50 grams or more of methamphetamine, his agreed statement of facts notes that the drug weight reasonably foreseeable to Steele was between 350 and 500 grams of methamphetamine. At sentencing, the court noted Steele's extensive criminal history, including seven probation revocations, which shows no respect for the law. He was also under a criminal justice sentence when involved in the conspiracy for which he was charged in this case. As the government notes, "[n]one of this has deterred Steele from a dedicated criminal path." (Dkt. No. 107, at 11.)

The court finds that Steele's sentence is necessary to reflect the seriousness of his offense, to promote respect for the law, and to provide just punishment for Steele's offense. It is also necessary to protect the public from further crimes by Steele. Moreover, Steele was sentenced for his role in a conspiracy, and his sentence takes into account the sentences of other participants in the conspiracy. Thus, the court also acknowledges that a reduction in Steeles

6

sentence may lead to an unwarranted sentencing disparity. Thus, the factors set forth in § 3553(a) do not support Steele's release.

### III. CONCLUSION

For the reasons stated above, it is hereby ORDERED that Steele's motion for compassionate release (Dkt. Nos. 96, 103) is DENIED. The clerk is directed to provide a copy of this order to the defendant, all counsel of record, and the United States Probation Office.

Entered: August 13, 2020.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
United States District Judge